UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LAMAR BRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 1:21-CV-12016-AK |
| v. | ) | |
| | ) | |
| WELLPATH, LLC; TERRY SMITH; and DIANA GARCIA | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**A. KELLEY, D.J.**

Plaintiff Lamar Brison is currently an inmate at the Souza Baranowski Correctional Center, but at all times relevant to his complaint, was housed in the Massachusetts Correctional Institute at Concord ("MCI"). Brison brings this action under 42 U.S.C. § 1983 ("Section 1983") alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment against Wellpath, LLC ("Wellpath") and two of its employees, Certified Nurse Practitioner Diana Garcia ("CNP Garcia") and Registered Nurse Terry Smith ("RN Smith"). All three defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [Dkt. 17]. For the following reasons, Defendants' motion to dismiss [Dkt. 17] is **GRANTED IN PART** and **DENIED IN PART.**

### I.   BACKGROUND

The following facts are drawn from the Complaint [Dkt. 1-1 ("Compl.")] and taken as true for the purposes of a motion to dismiss for failure to state a claim. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013); see also Fed. R. Civ. P. 12(b)(6). At all times relevant

1

to his complaint, Brison was an inmate incarcerated at MCI, serving a state sentence. [Dkt. 1-1 "Compl." at ¶ 1]. On March 3, 2021, Brison had an altercation with another prisoner and suffered substantial injury to his right hand. [Id.] Brison was sent to MCI's Health Service Unit ("HSU"), which is serviced by Wellpath, a corporation that provides medical care in jails, prisons, and correctional institutions. [Id. at ¶ 2]. Brison alleges that the disfiguration of his hand and immobility of his fingers was a clear indication that his hands and/or knuckles were broken or fractured. [Id. at ¶ 3]. While in the HSU, Brison states that he made it clear that he was in pain, but Wellpath "nursing employees" medically cleared him to be placed in isolation. [Id. at ¶¶ 4-5]. It is unclear from the text of the complaint whether he is implicating CNP Garcia and RN Smith in that decision. [Id.].

Approximately six to eight days later, Brison had x-rays conducted on his hand which showed that two of his knuckles were broken. [Id. at ¶¶ 6-7]. CNP Garcia, Wellpath's on-site designated provider, conducted these x-rays but it was not until eight days later, March 11, that Brison was transported to a surgeon for a procedure on his hand. [Id. at ¶¶ 8-9]. The surgeon told Wellpath that Brison was to return in two weeks for a post-operation check-up, which would have been on the third or fourth week of March. [Id. at ¶¶ at 10, 14]. RN Smith, Wellpath's Health Services Administrator, was responsible for coordinating this follow-up appointment, which she failed to do. [Id. at ¶¶ 11-12].

About a week after his follow-up was to be scheduled, CNP Garcia assessed Brison in the HSU along with a provider via telehealth-conference. [Id. at ¶ 15]. During this appointment, CNP Garcia cut off Brison's cast which revealed that an acute infection had developed at the injury site. [Id. at ¶¶ 15-16]. RN Smith again failed to coordinate the follow-up appointment. [Id. at ¶ 17]. Despite her knowledge of Brison's infection and of RN Smith's delay, CNP Garcia

2

did not follow up with RN Smith to ensure the appointment was coordinated. [Id.]. In April 2021, weeks after this assessment, RN Smith scheduled an off-site appointment with the surgeon to remove the wiring in his hand. [Id. at ¶¶ 18-19]. Brison alleges that this delay by all three defendants, in their official and individual capacities, caused him to suffer physical injury which still requires medical treatment. [Id. at ¶ 21]. His injury has left him with nerve damage, involuntary arm movement, and ongoing pain. [Id.].

On December 10, 2021, Brison filed a *pro se* civil complaint alleging that Defendants Wellpath, CNP Garcia, and RN Smith violated his Eighth Amendment rights due to their deliberate indifference to his medical needs. [Compl. at 3]. He additionally alleges a breach of third-party contract for adequate medical care against Defendant Wellpath. [Id. at ¶ 20].

Brison requests several forms of relief including: (1) $300,000 in compensatory damages from Wellpath; (2) $125,000 in compensatory damages from RN Smith; and (3) $75,000 in compensatory damages from CNP Garcia. [Id. at 5]. On June 23, 2022, all three defendants filed a motion to dismiss Brison's complaint for failure to state a claim. [Dkt. 17]. After some extensions of time, Brison filed his opposition [Dkt. 23] to the defendant's motion to dismiss on August 8th, 2022.[1]

## II.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

---

[1] Brison also filed a motion to compel [Dkt. 20] a transportation incident report and video footage of relevant cells in MCI. Generally, a party "may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). See also Local Rule 37.1(a) (Before filing discovery motion, parties shall confer in good faith to narrow the areas of disagreement.) Because this motion has been brought prematurely, the motion to compel is DENIED WITHOUT PREJUDICE. Now that the Court has addressed the motion to dismiss with claims against RN Smith and CNP Garcia proceeding to discovery, Brison may renew his request for such information after the Court sets a discovery schedule and the parties confer.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Reading the complaint "as a whole," the court must conduct a two-step, context-specific inquiry.  García-Catalán, 734 F.3d at 103.  First, the court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements.  Id.  Factual allegations must be accepted as true, while legal conclusions are not entitled to credit.  Id.  A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable.  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief."  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).

**III.    DISCUSSION**

Brison brings his constitutional claims pursuant to Section 1983 against both CNP Garcia, RN Smith, and Wellpath, for violating his Eighth Amendment rights. [Compl. at 3].  He also brings a separate breach of third-party contract claim against Wellpath. [Id.].

**A.  Section 1983**

Section 1983 provides that "[e]very person" acting "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia" who subjects or causes someone to be subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" shall be liable to the injured party.  42 U.S.C. § 1983.  Section 1983 does not itself provide substantive rights but serves as a mechanism "for vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S. 386, 393-94

(1989).  While Wellpath is a corporation servicing MCI, courts have held that private entities contracting with a state or local government to provide medical services in a prison are likely government actors.  See Sosa v. Massachusetts Dep't of Correction, No. 18-CV-12223-NMG, 2019 WL 3557701 (D. Mass. Aug. 2, 2019).  The defendants do not dispute that they were acting under the color of state law.  Instead, they dispute that the injuries alleged amounted to a violation of Brison's Eighth Amendment rights.

### 1. Eighth Amendment

Brison alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated by defendants' failure to provide treatment when he first sustained his injury and by their failure to timely bring him to his post-surgical follow-up appointment with an outside medical provider.  [Compl. at 3, ¶¶ 4-5, 9-12, 17-21].  That failure was exacerbated by further delays in treatment even after it was revealed that Brison's hand was infected. [Id. at ¶¶ 21].  This inaction on part of Wellpath and its employees, Brison claims, constituted deliberate indifference to his pain and suffering.  In Brown v. Plata, the Supreme Court held that where "society takes from prisoners the means to provide for their own needs," the failure to provide such care "may actually produce physical torture or a lingering death."  563 U.S. 493, 510 (2011) (internal citation omitted).  A party alleging an Eighth Amendment violation due to denied or inadequate medical care must "satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need."  Kolsiek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014).  The risk of harm "must have been obvious to the particular officials who are defendants" to satisfy the second element.  Ruiz-Rosa v. Rullen, 485 F.3d 150, 157 (1st Cir. 2007).

### a) RN Smith and CNP Garcia

Because of the severity of his injury, Brison has sufficiently pled the first prong of serious medical need. Courts have defined a medical need as "serious" if it has been "diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Leavitt v. Corr. Med. Servs. Inc., 645 F.3d 497 (1st Cir. 2011). Brison states that after his altercation, his hand was visibly disfigured, he was unable to mobilize his fingers, and that he told nursing officials he was in serious physical pain. [Compl. at ¶¶ 3-4]. Some courts have found that "bruises, abrasions, and cuts not requiring stitches are not sufficient to qualify as 'serious.'" Aberrnathy v. Anderson, 395 F.Supp. 3d 123, 135 (D. Mass. 2019); see also Lopes v. Riendeau, 177 F. Supp. 3d 634, 660 (D. Mass. 2016) (finding that skin rashes, skin tears, areas of hyperpigmentation, and subcutaneous skin nodules did not constitute a serious medical need). However, given how disfigured and immobilized Brison's hand was before and after x-rays were taken, the objective seriousness and need for treatment of his injury surpasses a mere skin rash or "bruises, abrasions, and cuts not requiring stitches." [Compl. at ¶¶ 3-4]; Id. Even after the surgical treatment of Brison's hand, the extent of his hand fracture, and his later infection to the injury site, qualify as serious.

As to the second prong, Brison has sufficiently pled that CNP Garcia and RN Smith were deliberately indifferent to his need. Deliberate indifference occurs when a defendant is subjectively "aware of facts from which the indifference could be drawn that a substantial risk of serious harm exists," but recklessly denies needed care. Ruiz-Rosa, 485 F.3d at 156. It requires defendants to have had a culpable state of mind and intent to wantonly inflict pain which can be demonstrated by the "response to an inmate's known needs or by denial, delay, or interference

with prescribed health care." DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991). To establish deliberate indifference, a plaintiff must show: (1) an unusually serious risk of harm; (2) the defendant's actual knowledge or willful blindness of the serious risk, and (3) the defendant's failure to take obvious steps to address that known serious risk." Manarite v. City of Springfield, 957 F.2d 953, 956 (1st Cir. 1992). Brison has alleged sufficient facts to meet these elements.

 Brison has alleged sufficient facts to show he had an unusually serious risk of harm. When Brison was examined by CNP Garcia, x-rays showed that he had a disfiguration and two broken knuckles requiring surgical intervention along with follow-up appointments. [Compl. at ¶¶ 7-9]. Additionally, Brison ended up sustaining an acute infection at the injury site which was readily apparent to CNP Garcia upon removing the cast on Brison's arm. [Compl. at ¶16]. Similar injuries were held sufficient to meet the deliberate indifference prong in the past. See e.g., Perry v. Roy, 782 F.3d 73, 79-80; (1st Cir. 2015) (broken jaw); RN Smith v. Warner, No. 15-cv-633-bbc, 2017 U.S. Dist. LEXIS 153711, at *25-28 (W.D. Wis. Sep. 20, 2017) (broken hand); Richardson v. White Cty. Jail, No. 17-cv-811-JPG, 2017 U.S. Dist. LEXIS 153222, at *11 (S.D. Ill. Sep. 20, 2017) (broken hand).

 Brison has provided sufficient facts at this stage to support his claim that RN Smith and CNP Garcia were willfully blind to or had actual knowledge of the serious risk. It is unclear if Brison is alleging that both CNP Garcia and RN Smith were among the nursing employees mentioned in the complaint who, despite his complaints of pain, cleared Brison to be placed in isolation following his altercation. [Compl. at ¶¶ 4-5]. The Court infers at this stage that Brison is making these allegations against RN Smith and CNP Garcia which, if true, is sufficient to show actual knowledge of the serious risk. Even absent this inference though, Brison's

allegations against CNP Garcia and RN Smith for their delays in providing follow up treatment are sufficient to show actual knowledge or willful blindness.

Actual knowledge can be demonstrated on the part of CNP Garcia because she reviewed the x-rays which revealed the disfiguration in Brison's knuckles, putting her on notice of the risks in further delaying treatment, but she then waited another 72 to 96 hours before medically clearing him for transportation to his surgery. [Compl. at ¶¶ 8-10]. After the surgery, Brison additionally alleges that CNP Garcia was aware of both the risk of infection and the fact that RN Smith had not coordinated the two-week follow-up appointment with Brison's surgeon. [Id. at ¶¶ 17]. However, CNP Garcia allegedly did not coordinate with RN Smith to schedule that appointment until Brison's cast was removed, weeks after the appointment date and after the infection to his injury was apparent. [Id. at ¶¶ 16-18].

The Court can infer that RN Smith had actual knowledge or was willfully blind of the serious risk given that her role as the designated Health Service Administrator for MCI's Health Service Unit obligated her to coordinate outside medical appointments. [Id. at ¶ 11]. It can further be inferred RN Smith had actual knowledge through the Complaint which states that she made the "individual medical decision not to coordinate Brison's two-week follow-up with his surgeon" which implies knowledge since one must have knowledge of a thing to decide not to do it. [Id. at ¶ 13].

Brison has sufficiently alleged that RN Smith and CNP Garcia failed to take obvious steps to address the known serious risk to Brison. Their failure here was their delay. Brison's treatment was first delayed by the nursing staff who medically cleared him to be placed in isolation despite his complaints of serious pain. [Id. at ¶ 5]. As to the claims against CNP Garcia, there was allegedly a delay of 72 to 96 hours before she ordered Brison to be transported

to a surgeon. [Compl. at ¶ 9]. Weeks later, after discovering the infection to the injury site, CNP Garcia again "failed to correct the delay in medical care." [Compl. at ¶ 17]. CNP Garcia is alleged to have waited weeks after the discovery of the infection to order RN Smith to coordinate the transfer. [Compl. at ¶¶ 17-18].

As to the claims against RN Smith, there was a delay in coordinating in accordance with the surgeon's order Brison's follow up appointment. [Compl. at ¶ 12]. Brison alleges that the unnecessary delay in the transfers and RN Smith's failure to coordinate or schedule his follow-up failed to address the known risk. [Compl. at ¶¶ 20-21]. Such delay in response to a medical need can be a form of deliberate indifference. See Leavitt v. Corr. Med. Servs., 645 F.3d 484, 498-500 (1st Cir. 2011) (delays in antiretroviral therapy for HIV); Perry v. Roy, 782 F.3d 73, 79-80; (1st Cir. 2015) (medical staff took a "wait-and-see approach" when plaintiff requested treatment for a broken jaw). CNP Garcia and RN Smith had the power to respond to Brison's injury in a timely manner which may have mitigated the harm he faced, but they failed to do so—thus creating the basis for their liability. See Miranda v. Munoz, 770 F.2d 255, 261 (1st Cir. 1985) (defendants who "had a day-to-day responsibility to ensure adequate medical services be provided to all inmates" and who "had the authority to work out a remedy when he saw deficiencies in medical treatment" could be held liable under Section 1983 for deliberate indifference.).

Defendants, in their joint motion to dismiss, argue that the claims against RN Smith and CNP Garcia are insufficient because they are never alleged to have "[taken] any action towards Plaintiff with the intention of inflicting pain." [Dkt. 18 at 9]. This argument confuses the meaning of deliberate indifference. While it is true that the conduct must be intentional, rather than merely negligent, the motive or purpose of the conduct need not be a sadistic infliction of

bodily harm to reach the level of deliberate indifference.  In Battista v. Clarke, 645 F.3d 449 (1st Cir. 2011), the First Circuit made this clear:

> there is enough in this record to support the district court's conclusion that "deliberate indifference" has been established—or an unreasonable professional judgment exercised—even though it does not rest on any established sinister motive or "purpose" to do harm.  Rather, the Department's action is undercut by a composite of delays, poor explanations, missteps, changes in position and rigidities—common enough in bureaucratic regimes but here taken to an extreme.

645 F.3d at 455.  Here, the willful delays in providing treatment to Brison, even without a proven motive or purpose to do harm, is sufficient.

Because Brison has alleged facts sufficient to support his claim for deliberate indifference against CNP Garcia and RN Smith, those claims will proceed.

### b)  Wellpath, LLC and Supervisor's Liability

Given that Brison's allegations against Wellpath are focused on the actions of CNP Garcia and RN Smith, his claims against Wellpath should be dismissed because a Section 1983 claim cannot be brought based on the theory of respondeat superior.

The theory of respondeat superior holds that a supervisor's liability can rest solely on their position of authority.  This tort concept does not apply to Section 1983 claims and supervisors "may only be held liable under Section 1983 on the basis of their own acts or omissions."  Whitfiled v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005).  Usually, this requires the supervisor to be a "primary violator or direct participant in the rights-violating incident" or to supervise, train, or hire a subordinate with "deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." Wilmont v. Tracey, 938 F. Supp. 2d 116, 141 (D. Mass. 2013) ((citing Sanchez v. Pereira-Castilla, 590 F.3d 31, 49 (1st Cir. 2009)).  There must be an "affirmative link" between the alleged constitutional violation and the supervisor's conduct "that amounts to condonation or

10

tacit authorization." Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (citation omitted).

Here, Brison makes no claim that Wellpath's action or inaction, general policies and trainings led to CNP Garcia and RN Smith's actions. In fact, his complaint states that both nurses did not follow Wellpath's policies which, if followed, would have ensured that the nursing staff coordinated his outside medical appointment. [Compl. at ¶ 11]. This allegation seems to differentiate between Wellpath's intended policies and CNP Garcia and RN Smith's actions as separate actors engaged in Brison's treatment. Brison also has not alleged any facts indicating an affirmative link between Wellpath as a direct participant in the actions of the nursing employees who initially treated Brison and medically cleared him to be placed in isolation. [See id. at ¶ 5]. Therefore, any claim against Wellpath for supervisor liability should be dismissed.

### B. Breach of Contract

In addition to the above Section 1983 claims, Brison alleges that Wellpath violated their third-party contractual obligation to provide him adequate medical care. [Dkt. 1 at 5, Compl. at ¶ 20]. To succeed on a third-party contractual action, a claimant must show that they are the intended third-party beneficiary of contract between the signing parities. Spinner v. Nutt, 631 N.E.2d 542, 546 (Mass. 1994). A plaintiff may not be merely an incidental beneficiary, who as a by-product of the contract benefits from its performance. Id. at 556. The "parties' intent determines whether a third party is an incidental or intended beneficiary." Markel Service Ins. Agency, Inc. v. Tifco, Inc., 530 N.E.2d 340, 342 (Mass. 1988); see Rae v. Air-Speed, Inc., 435 N.E.2d 628, 194 (Mass. 1982) ("A party is an intended beneficiary where

the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance") (citation omitted).

To show that Wellpath and MCI did not designate any intended beneficiaries, the defendants request that this Court take judicial notice of their service contract.[2] [Dkt. 18 at 12 "Contract"].  When resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court is generally limited to "the complaint, documents attached to it, and documents expressly incorporated into it."  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71-72 (1st Cir. 2014).  Here, the Court grants this request as Brison expressly references this contract between Wellpath and MCI-Concord and Wellpath's purported third-party duty to him.  [See Compl. at ¶¶ 11, 13, 20].  In examining this contract's intent, the parties make it expressly clear that "[n]othing contained in this Contract is intended or shall be construed to evidence an intention to confer any rights or remedies upon any person other than the parties hereto and their respective agents and representatives."  Contract at 175.  The only parties to this contract are the Massachusetts Department of Corrections, which includes MCI, and WellPath.  Because the parties to this contract specifically exclude any obligation to third party beneficiaries and Brison is not a signatory party, his third-party contract claim is dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss [Dkt. 17] is **GRANTED IN PART AND DENIED IN PART.**  The motion to dismiss as to CNP Garcia and RN Smith's motion is **DENIED**.  The motion to dismiss as to Wellpath is **GRANTED** and Plaintiff's claims against Defendant Wellpath are accordingly **DISMISSED**.

---

[2] The Wellpath-MCI Concord contract is publicly accessible at: COMMBUYS - Master Blanket.

**SO ORDERED.**

Dated: March 14, 2023                                                                /s/ Angel Kelley
                                                                                     Hon. Angel Kelley
                                                                                     United States District Judge